## Case No. 1,921.

### In re BROICH et al.

[7 Biss. 303;[1] 15 N. B. R. 11.]

District Court, E. D. Wisconsin. Oct., 1876.

BANKRUPTCY—SECURED CLAIM—LIEN—COMPUTING NUMBER AND AMOUNT—WAIVER.

1. An indorsed promissory note is not a secured claim within the meaning of § 5075 of the bankrupt act.

2. A creditor seizing property under process of attachment issued from the state court within four months prior to the commencement of bankruptcy proceedings, is not considered as having a secured claim, and may be counted in estimating the number and amount of the creditors of the bankrupt.

3. Such a creditor has only an inchoate, conditional lien, and not a fixed, absolute, vested and continuing one, as intended by the statute.

4. In computing the number of creditors who shall join in the petition, creditors whose debts do not exceed two hundred and fifty dollars shall not be reckoned; but in computing the amount or value, all claims should be included regardless of amount.

[See In re Bergerom, Case No. 1,342.]

5. Where an indorsee of a note proved up his claim against the estate of the makers, and afterwards and during the pendency of the bankruptcy proceedings received payment from the indorser, his relation to the liability ceases, he is no longer a creditor of the makers, and all claim against the makers, so far as he is concerned, is extinguished, and consequently he can take no further part in the proceedings. The indorser becomes subrogated to his rights, and the demand becomes one in favor of the indorser alone against the makers.

[See Baker v. Vasse, Case No. 784; Lenox v. Prout, 3 Wheat. (16 U. S.) 520; McCarty v. Roots. 21 How. (62 U. S.) 432.]

6. The act of joining in a creditors' petition by a secured creditor, without reference to the security, is a waiver of such security.

7. The transfer to one of the creditors of a bankrupt, of the book accounts within two months of commencement of proceedings, is not presumptively a fraudulent preference.

In bankruptcy. On the 10th day of April, 1876, proceedings in involuntary bankruptcy were instituted against the debtors [Hugo Broich, Louis Kurz, and John Kremer], who composed the firm of Broich & Co. The petitioning creditors were three in number, as follows: Fette & Meyer, whose claims were stated in the petition as amounting to $327.24, M. S. Cotzhausen, representing $842.18, and N. B. Caswell, a creditor to the amount of $800. The aggregate of these debts being $1,969.42. The debtors made no answer to the petition, but C. H. Hamilton & Co., as attaching creditors, answered, denying that the requisite number of creditors had joined

in the petition, or that the requisite amount of provable debts were represented therein; and further charging that the proceedings were collusively begun. Upon this answer, an order of reference was made to the register, to take testimony, and the debtors were ordered to file a verified list of their creditors and of all debts against them. Pursuant to this order, testimony was taken and such list was filed. This list named six creditors, each representing claims over $250, such creditors holding, as it was alleged, indebtedness aggregating $12,823.22. The total number of creditors named in the list, including all who held demands in any amount, was sixty-three, and the total amount of indebtedness as stated in the list, was $16,472.14. Upon the showing thus made on the face of the debtors' list, counting only creditors named therein as holding demands over $250, the court held that the aggregate debts of the petitioning creditors did not amount to one-third of the provable debts of the debtors, and granted ten days' time within which other creditors might join in the petition. On the 3d day of August, Mrs. Hedwig Broich, wife of Hugo Broich, one of the debtors, made application to join in the creditors' petition, as a creditor to the amount of $1,746.93, principal and interest. Her claim was stated in the debtors' list, which was filed April 21, at $1,662.50. Alexander V. Cotzhausen also made a similar application, in which he set forth a demand for $4,000, with interest at ten per cent. from the 16th of September, 1875, against the debtors; which demand was included in the debtors' list, and was founded upon a promissory note made by the debtors, dated September 16th, 1875, payable to the order of Valentine Blatz, on the 1st day of July, 1876, and indorsed by Valentine Blatz and F. W. Cotzhausen. Accompanying this application, which was in the form of an affidavit, was a proof of the claim made before the register. Both the affidavit and proof were sworn to before the register, June 23d, 1876, but neither had been filed or presented to the court for any action thereon, until the present hearing. The note thus presented as a claim against the debtors, and held by Alexander V. Cotzhausen, had been, when due, and pending the present proceedings, viz.: on the 3d of July, 1876, paid to the holder by the indorser, Valentine Blatz. Resistance was made by the attaching creditors to the admissibility of these claims presented by Mrs. Hedwig Broich and Alexander V. Cotzhausen and to the application of those parties to join in the creditors' petition; and these, with other questions, various in character, arising in the case, are considered in the opinion of the court.

Cotzhausen, Smith, Sylvester & Scheiber, for petitioning creditors.

J. J. Orton and Jas. G. Jenkins, for attaching creditors.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

DYER, District Judge. This controversy, which is between petitioning and attaching creditors, and which originated in a denial that the debts represented by the petitioning creditors amount to one-third of all of the provable debts of the debtors, presents a variety of interesting and important questions. In proceeding to dispose of them, I may not adhere to the order in which they were argued.

I. At one stage of the case, the petitioning creditors raised the point as to whether the demand of $4,000, described in the debtors' list as held by Alex. V. Cotzhausen, should be counted, in ascertaining the amount of the debtors' provable debts. That demand is in the form of a promissory note, made by the debtors: and, being indorsed by Valentine Blatz, the suggestion was made that it was a secured claim. I held otherwise, and now re-affirm that ruling. Section 5075 of the Revised Statutes clearly declares what shall be a secured debt within the meaning of the bankrupt law. The security must be in the form of a mortgage or pledge or lien on the property of the bankrupt. Security in the shape of an indorsement or guaranty of a third person, is not within the meaning of the section cited. This question is so thoroughly discussed and well decided by Judge Hopkins, of the western district of this state, in Re Anderson [Case No. 350], that further consideration of it is unnecessary.

II. It is insisted in behalf of the petitioning creditors, that the claims of Hamilton & Co. ought not to be counted as provable debts, because, before the filing of the petition in bankruptcy, they had commenced attachment proceedings against the debtors, which were then pending in the state court, had seized personal property under their attachment, and that these claims became thereby secured. In the Case of Hatje [Case No. 6,215], in disposing of the main question there involved, I treated the demands of attaching creditors as provable debts to be included in ascertaining the amount of indebtedness that should be represented in a creditors' petition. The precise question we have here, was not, however, discussed in that case. In another case in this district, unreported (In re Cole), attaching creditors joined in a petition for adjudication. It was urged that they were lien-holding creditors, and could not, therefore, be counted among those holding provable debts under the provisions as to number and amount in the amendment of 1874. I held the contrary and sustained their right to file a petition for adjudication. Regarding the claims of such creditors, as secured, that ruling was sanctioned by well settled adjudications that even secured creditors may file such petition, and that the act of doing so, without reference to lien or security, is a waiver and relinquishment of such lien; the creditor then standing before the court as unsecured.[2] The two cases referred to, thus involved in some phases, the question we have here, but as it is now directly presented as an independent proposition, I shall treat it as an original question in this court. It has been held that secured creditors are not to be reckoned among those who constitute the requisite number, and represent the requisite amount under the amended 39th section of the act [of 1867; 14 Stat. 536]. Judge Blodgett, in a very clear and satisfactory opinion in Re Frost [Case No. 5,134], has so decided. He points out the mode in which a secured creditor may prove his debt; holding, that such debt is provable only on condition that the security is surrendered or exhausted; which condition "can only be performed after there is an assignee to whom the surrender of security can be made, or by a sale of the property as the court shall direct, both of which contingencies can only occur after the debtor is adjudged bankrupt, or at least after the court has taken jurisdiction of the subject matter." Admitting that a lien-holding creditor may petition for adjudication against his debtor, there yet exists in such case, the condition of surrender or loss of security; and his conclusion is, that by the use of the term "debts provable under this act," used in the amended 39th section, congress meant debts unconditionally provable without any release of security or other preliminary action by the court or assignee. This ruling has been followed in Re Green Pond R. Co. [Id. 5,786]. In the category of secured creditors stands also the preferred creditor, with reference to provability of his debt. Rev. St. §§ 5021, 5084; In re Currier [Case No. 3,492].

Now, the question is, does a creditor seizing property under process of attachment, issued from the state court within four months prior to the commencement of bankruptcy proceedings, stand in the rank of secured creditors mentioned in section 5075, Rev. St.? Of what character of lien does that section speak? I think the lien there contemplated, is one that is fixed, absolute, vested, continuing. A lien by attachment is not inherently of that character, even under the state statute. Emphatically not under the bankrupt law. True, that an attachment is a proceeding by which a creditor may ultimately secure payment of his debt from particular property, and so in a certain sense gives a lien on or a right to follow the property attached. But it is inchoate, conditional in its character. Springing as it does from legal proceedings, it is liable to be defeated at the very next step in those proceedings, under procedure pointed out by the state statute. It is not a lien ripened into fixed, vested security, such as is created by contract between parties or final judgment of a court. An attachment is in its nature mesne pro-

---

[2] In re Bloss [Case No. 1,562]; In re Stansell [Id. 13,293]; In re Frost [Id. 5,134].

cess; a judgment and execution are the final action and process of the court and perfect, complete that which up to that point was in progress and contingent. Herein, I think, lies a distinction between the cases of a so-called attachment lien, and a judgment or execution lien, referred to by counsel on the argument. Further, the bankrupt law declares that upon adjudication and assignment of the estate, all attachments issued within four months before the commencement of bankruptcy proceedings are dissolved. The effect of this is, to destroy the lien or preference created by an attachment issued within a certain period, the intent of the law being to place such an attaching creditor on the basis of unsecured creditors. Can it be maintained then, that a creditor, whose lien thus acquired may be terminated, taken wholly away by the bankruptcy, must be excluded as a secured creditor from the rank of creditors to be counted in estimating number and amount under the amended 39th section? In my judgment, it cannot. The lien should be one continuing, notwithstanding bankruptcy, not destroyed by it. It may be added, that to exclude attaching creditors from the list of those who are to be reckoned in ascertaining whether the requisite number have joined in a petition and whether the requisite amount of debts is represented therein, would seem inconsistent with the ruling that attaching creditors, as parties holding provable debts, may intervene and contest adjudication; and the latter proposition, has become emphatically settled in the affirmative. The views I have expressed, concur with those stated by Judge Foster in Re Scrafford [Case No. 12,557], and my conclusion upon this point is, that the demand of Hamilton & Co., should be included in ascertaining the amount of the debtors' provable debts.

III. It is claimed by the attaching creditors, that in computing the amount of provable debts that must be represented in the creditors' petition, creditors holding claims under as well as over two hundred and fifty dollars should be included. Upon this point, there are two leading decisions, directly in conflict, Judge Blatchford having held the negative, and Judge Brown the affirmative of the proposition: In re Hymes [Case No. 6,986]; In re Hadley [Id. 5.894]. I have read these decisions and examined the statutory provisions upon the point, with care, and regard the reasoning of Judge Brown as conclusive. His ruling has been followed by Judge Lowell, in Re Currier [Id. 3,492], and by Judge Welker, in Re Woodford [Id. 17,-972]. Upon an examination of the various provisions of the bankrupt law bearing on the subject, I do not see how it can be doubted that congress intended that, in computing the number of creditors who shall join in a petition, creditors whose debts do not exceed two hundred and fifty dollars should not be reckoned; but that in computing the amount or value, all claims should be included regardless of amount.

IV. One of the items of indebtedness stated in the debtors' list is a demand of $4,000, in favor of Alex. V. Cotzhausen. This demand is in the form of a promissory note, dated Sept. 18th, 1875, made by the debtors, due July 1st, 1876, payable to the order of Valentine Blatz, and indorsed by him. This note, at the time bankruptcy proceedings were commenced and subsequently, was held by Alex. V. Cotzhausen. On the 23d of June, 1876, he verified proof of the claim before the register, and on the same day made and verified before that officer a further statement of the demand, as a basis for joining in the creditors' petition. This proof and statement were not, however, filed or presented for any action thereon by the court, until the hearing of this case in August, when application was made by the claimant, Cotzhausen, to join in the petition. On the 3d of July, 1876, and during the pendency of these proceedings, he received from Blatz, the indorser, the full amount due on the note. It is insisted, notwithstanding this payment, that the demand may properly be presented by Cotzhausen, as a claim against the debtors, and that as a creditor he should be permitted to join in the creditors' petition, though Blatz does not participate in such application, and is understood not to consent to the same. The position thus taken upon this question, is supported in argument by the theory, that the day when a petition in bankruptcy is filed, is the time when the status of creditors is fixed, and that if a claim is at that time valid, it must be recognized as such throughout the subsequent proceedings, notwithstanding change occurring in the position of the claim, or in the relations of the creditors to the debtors or their estate. It is true that the rights of parties are ordinarily to be considered upon the footing which they held at the time of the commencement of proceedings. It has been the view of some judges, that it was the intention of the law to adopt the time of adjudication as the time at which a debt must exist, in order to be provable; by others, that the time when the petition for adjudication is filed, controls in the particular named. In re Hennocksburgh [Case No. 6.367]; In re Crawford [Id. 3.363]. It may be admitted, that the status of parties as it was when proceedings were commenced, is, as a rule, to control in subsequently settling their rights; nevertheless, I do not understand the principle to extend to the length of preserving to a party the character of creditor, when that character has been voluntarily surrendered, and has actually ceased.

Here, the indorsee of a note, holding the liability of both makers and indorser, during the pendency of proceedings against the makers, voluntarily receives payment from the indorser. Can it be said that, because he was a creditor at the filing of the peti-

tion, he continues a creditor, or can hold the position of creditor, for any purpose, notwithstanding such payment? I regard the question as free from all doubt. When the indorsee received payment from the indorser, his relation to the liability, ceased. He was no longer a creditor of the makers. All claim against the makers, so far as he was concerned, was extinguished. The indorser became subrogated to his rights, and the demand became one in favor of the indorser alone against the makers. The only party who could then assert the claim against the debtors, and in whose name and at whose will it could be presented as the basis for an application to join in these proceedings, was the indorser Blatz. If he does not now present the claim and as a creditor ask leave to join in a creditors' petition, I do not think the indorsee, now paid by the indorser, can. Nor do I regard the circumstance, that verification or proof of the claim had been made by Cotzhausen before he received payment, and that delay occurred in disposing of the present issue in this case as affecting the question. Such proof of claim was not filed and no action of the court was sought upon it, until after the payment was made. The fact of payment by the indorser, and of voluntary acceptance of the money by the holder of the note, is necessarily controlling, and must deprive the present claimant of recognition as a creditor in these proceedings. As bearing on this question, see In re Montgomery [Case No. 9,730]; In re Brown [Id. 1,975],—where it was held that a creditor might prove a claim based on a debt existing at the time of proceedings commenced in bankruptcy, notwithstanding he had after adjudication, recovered a judgment on the demand. But that was on the ground that the identical debt in favor of such creditor, remained, and was not extinguished by the judgment. There are cases where an indorser had made partial payment to the holder of the note, and such holder was permitted to make proof of the whole amount in his own name. In re Ellerhorst [Id. 4,381]; Downing v. Traders' Bank [Id. 4,046]. But in these cases, the holder of the paper was still a creditor; still a party in interest, because he had been but partially paid, and the proof was allowed for his benefit, to the extent of his interest, and for the indorser's benefit, to the extent of his payment. The dissimilarity between this class of cases and the case at bar, is apparent. The application of Alex. V. Cotzhausen to join in the creditors' petition must be denied.

V. The claim of Mrs. Hedwig Broich for $1,662.50 included in the debtors' list, will be recognized, and her application to join in the creditors' petition will be granted. Upon the testimony, I think that claim one that should be included among the liabilities of the debtors.

VI. It is insisted also, by the attaching creditors, that the claim held by N. B. Caswell, who is one of the petitioning creditors, is secured, and ought not to be counted in the present estimate of indebtedness. He was the lessor of the premises occupied by the debtors in carrying on their business. The lease contained a clause by which the lessees conditionally transferred to the lessor, certain personal property on the premises as security for the rent. If this was a valid security, it has been waived by Caswell. The act of joining in a creditors' petition without reference to security is such waiver.

VII. It is further claimed that $359.45 should be added to the claim of Hamilton & Co., as scheduled, for interest, etc.; that $84.43 should be added to the claim of Mrs. Hedwig Broich, and $129 to that of Valentine Blatz. Allowance of interest should be on the basis of equality toward all creditors. Interest on one claim should therefore stop simultaneously with that on another. This being a proceeding that precedes adjudication, and that involves the ascertainment of all provable debts, it is equitable that interest on all claims drawing interest should stop for purposes of this proceeding, when the petition was filed, April 10th, 1876. Interest will be computed on this basis. If any part of the $359.45, which it is said should be added to the demand of Hamilton & Co., consists of costs incurred in the attachment proceeding, they must be excluded. In re Hatje, supra. Whatever Valentine Blatz received from the debtors, to be applied on the $4,000 note indorsed by him, should be deducted from the amount due thereon for principal and interest, April 10th, 1876, when the petition in bankruptcy was filed.

VIII. Valentine Blatz is named in the debtors' list as a judgment creditor to the amount of $3,833.50, and it is insisted by petitioning creditors that he holds security for this demand, and therefore should not be reckoned in the computation now required in this proceeding. It appears that on the 13th of February, 1876, less than two months prior to the filing of the petition in this case, Broich & Co., to secure the payment of the judgment in favor of Blatz, executed in writing a transfer to him of all book accounts and outstanding demands in favor of the firm. There was no actual delivery to the judgment creditor of these transferred demands and choses in action, and they have ever since been in the hands of other parties than the transferee, Blatz. But he claims them as fully transferred to him for security, and in this proceeding, insists upon his right to them. This being so, I think that as to this judgment, he must to a limited extent, as hereafter indicated, be regarded as a secured creditor. The aggregate amount of the transferred demands and accounts is $3,750. From the testimony it would appear, that at the time of the transfer, they were worth about fifty cents on the dollar. This was their value as nearly as

they can be arrived at, from the evidence on the subject. This value would amount in figures to $1,875.

In the Case of California & P. R. Co. [Case No. 2,315], it was held that the court may, at this stage of proceedings inquire into and determine what is the value of securities held by creditors, in order to ascertain whether the claims of petitioning creditors are of the amount required by the statute. Following the rule adopted in that case, and finding the value of the securities assigned to Blatz, at the time of the transfer to be $1,875, I deduct that amount from the amount due on his judgment when the petition in bankruptcy was filed, April 10th, 1876, and treat the balance $1,875, as unsecured, and is an amount to be reckoned and included in estimating the debtors' unsecured, provable debts, when the petition was filed. The attaching creditors have urged that the transfer by the debtors to Blatz, of their accounts and demands as security, should be treated as a fraudulent preference and void, and so that the judgment held by Blatz should be regarded as wholly unsecured. But to make that transfer a fraudulent preference, it must be shown that the debtors were at the time insolvent, or contemplated insolvency; that they made the transfer with a view to giving a preference, and that the transferee, Blatz, had reasonable cause to believe that Broich & Co. were insolvent, and knew that the transfer was made in fraud of the provisions of the bankruptcy law, which facts, if they exist, do not yet appear, and cannot be now assumed, in order to defeat the transfer.